IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

JERRY AYERS, et al.,

        Plaintiffs,

v.                                                                                                         Civil Action: 5:05-CV-95

CONTINENTAL CASUALTY COMPANY,
trading as CNA,

        Defendant.

**MEMORANDUM, OPINION, AND ORDER DENYING DEFENDANT'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND TO ENLARGE THE NUMBER OF ALLOWABLE DEPOSITIONS**

On May 3, 2007 came the above named Plaintiffs, by Paul Harris and Joseph A. Wallace, in person, and the above named Defendant, by John Moustakas and Larry Blalock, in person, for Defendant's motion to compel production of documents and to enlarge the number of allowable depositions. Evidence was introduced by Defendant in the form of a deposition transcript. The Court also notes both parties have attached exhibits to their pleadings.

## I. Introduction

A.    Procedural Background

The parties engaged in discovery and a dispute arose. Defendant filed its motion to compel production of documents and to enlarge the number of allowable depositions on April 12, 2007. Plaintiffs filed a response on April 26, 2007. Defendant filed a reply on May 1. This Court held an evidentiary hearing and argument regarding the motion on May 3.

B.    The Motion

Defendant's motion to compel production of documents and to enlarge the number of

allowable depositions.[1]

C.  Decision

Defendant's motion to compel production of documents and to enlarge the number of allowable depositions is hereby DENIED.

## II. Facts

This case concerns a third party bad faith insurance suit. Defendant is alleged to have violated the West Virginia Unfair Trade Practices Act in previous litigation in state court. In that litigation, over three hundred persons sued Valley Supply Company for allegedly providing products containing asbestos to Labcraft, where the plaintiffs worked. Valley Supply was insured by Defendant. Many of the plaintiffs submitted x-ray reports from Dr. Raymond Harron. In February 2004, twenty seven plaintiffs submitted affidavits stating Valley Supply sold products containing asbestos to Labcraft. Defendant offered its insurance policy limits of $1.5 million to plaintiffs in March 2004 and the case was settled.

The settlement included an agreement as to how the money was to be distributed to the individual plaintiffs. First, Valley Supply was to make settlement offers to each of the plaintiffs. Those who accepted the offer would receive their funds. Those not accepting would receive a jury trial on the issue of damages. However, in no event would the total amount awarded to all plaintiffs exceed $1.5 million. The trial was simply to determine how to allocate the funds remaining among the non-settling parties. The amount awarded by the jury to each plaintiff was used to determine his share of the remaining amount. Valley Supply did not participate in the damages trial since it had no stake in the outcome.

---

[1] Docket No. 150

In the present case, Defendant sought to determine the strength of the underlying asbestos claims of Plaintiffs. Defendant states it did this because one of the allegations in this case is that Defendant failed to settle the asbestos claims when liability was reasonably clear. Defendant took the deposition of Dr. Harron. However, Dr. Harron refused to answer questions about his interpretations of x-rays, instead pleading his Fifth Amendment right against self-incrimination. Dr. Harron is the subject of criminal investigations in New York and Texas. Defendant also took depositions from many of the plaintiffs in the current action. Three of those plaintiffs were among the twenty seven persons who submitted affidavits in the underlying case. The depositions of those three persons were taken on December 11 and 12 of 2006. Each of them denied the substance of the affidavits.

Due to these developments in discovery, Defendant sought additional information. In a request for production, Defendant asked Plaintiffs to either produce all their medical records or sign releases authorizing Defendant to obtain them. Subsequent discussions between counsel narrowed the request to providing authorization for Defendant to obtain the x-rays Dr. Harron reviewed. Plaintiffs still refused the request in communications between counsel on March 13 and 15, 2007. Defendant also requested Plaintiffs to consent to depositions for the other twenty four underlying plaintiffs who provided affidavits on March 13. Plaintiffs refused on March 16, contending Defendant was only entitled to nine depositions under the Rules.

### III. The Motion

A. <u>Contentions of the Parties</u>

Defendant asks the Court to grant the motion to compel. First, Defendant contends Plaintiffs should be compelled to sign releases for their original chest x-rays in the underlying

3

litigation. Those x-rays will provide information on whether Plaintiffs' claims in that action were legitimate. Defendant also urges the Court to allow it to depose the remaining persons who signed affidavits in the underlying litigation. Defendant points out three of those persons have disavowed their affidavits and if the remaining persons do the same it will provide powerful evidence of fraud in the underlying claims.

Plaintiffs urge the Court to deny the motion. Plaintiffs argue there is no basis under Rule 34 to compel their signature to medical release forms. Plaintiffs also contend Defendant may not obtain the release forms due to collateral estoppel since the issue of liability was decided in the underlying litigation. Furthermore, Plaintiffs argue Defendant should have obtained the x-rays in the underlying litigation and now have no basis to complain about their lack of information. Plaintiffs contend Defendant should not be allowed to take additional depositions because it has failed to diligently pursue its ability to take them. Plaintiffs also argue the Local Rules do not permit a grant of additional depositions until all available depositions have been exhausted, which they say have not been in this case. Finally, Plaintiffs state that allowing the extra depositions will represent an extreme burden to counsel.

B.  The Standards

1.  Discovery - Scope. The Federal Rules provide that "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1). The Rules further give courts the authority to "order discovery of any matter relevant to the subject matter involved . . . Relevant

4

information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)." Id.

2. <u>Discovery - Scope</u>. It has been repeatedly held that the "discovery rules are to be accorded a broad and liberal treatment." <u>Hickman v. Taylor</u>, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451, 460 (1947). However, the discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1); <u>see also</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115, 134 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied").

3. <u>Discovery - Relevancy</u>. A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." <u>Hinkle v. City of Clarksburg,</u> 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted).

4. <u>Discovery - Duty to Supplement</u>. Once the discovery process has commenced, a party has "a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material

respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2).

5. <u>Discovery - Duty to Respond Fully and Completely - No Gamesmanship</u>. Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond. <u>Hansel v. Shell Oil Corporation</u>, 169 F.R.D. 303, 305 (E.D. Pa. 1996). Gamesmanship to evade answering as required is not allowed. <u>Id.</u>

6. <u>Discovery - Requests for Production</u>. A party seeking discovery may serve a request on another party asking him to permit the requesting party "to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a).

7. <u>Discovery - Requests for Production - Objections</u>. While Rule 34 of the Federal Rules of Civil Procedure does not contain the same specificity and waiver provisions as Rule 33 of the Federal rules of Civil Procedure, the Advisory Committee notes to Rule 34 states that "the procedure provided for in Rule 34 is essentially the same as that in Rule 33." <u>Pulsecard v. Discover Card Servs., Inc.</u>, 168 F.R.D. 295, 303 (D. Kan. 1996).

8. <u>Discovery - Motion to Compel</u>. Motions to compel responses to requests for production are governed by Federal Rule of Civil Procedure 37(a)(2)(B). This Rule provides that if a party declines to answer a request for production, the serving party "may move for an order . . . compelling inspection in accordance with the request." <u>Id.</u>

9. <u>Discovery - Motion to Compel - Burden of Proof</u>. The party opposing a motion

to compel bears the burden of showing why it should not be granted. Roesberg v. Johns-Manville Corp., 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

C. Discussion

I.

Authorizations for Chest X-Rays

The first issue is whether collateral estoppel applies to bar Defendant from obtaining Plaintiffs' chest x-rays. Plaintiffs assert Defendant is trying to litigate the issue of whether Plaintiffs have asbestos related medical conditions, which was the issue in the underlying state case. Since that case ended in a judgment for Plaintiffs, Plaintiffs assert the issue is settled. Plaintiffs also contend estoppel applies since Defendant had releases in the underlying action, yet chose not to utilize them. Defendant disputes these arguments. Defendant contends that since the state court proceeding ended in settlement, the issue of Plaintiffs' medical conditions was never litigated and so cannot serve as the basis for collateral estoppel. Defendant also points out that the trial in the state court was set for two phases. The first phase would deal with whether Defendant's insured supplied defective products. Only if the insured was found to have supplied defective products would phase II be held. This would deal with medical issues and a calculation of damages. Defendant finally argues Plaintiffs' assertion that medical releases were provided in the underlying litigation is simply untrue. They state that only three of the current Plaintiffs provided such releases.

Where the prior proceeding that may make issue preclusion applicable is a state court proceeding, as here, the federal courts use the law of the state to determine if preclusion applies.

7

Dionne v. Mayor of Baltimore, 40 F.3d 677, 682 (4th Cir. 1994). "Collateral estoppel is designed to foreclose relitigation of issues in a second suit which have actually been litigated in the earlier suit even though there may be a difference in the cause of action between the parties of the first and second suit." Holloman v. Nationwide Mut. Ins. Co., 217 W. Va. 269, 274, 617 S.E.2d 816, 821 (2005) (quoting Syl. Pt. 2, in part, Dodrill v. Nationwide Mut. Ins. Co., 201 W. Va. 1, 491 S.E.2d 1 (1996)). The West Virginia Supreme Court of Appeals has held issue preclusion applies where four conditions are shown:

> (1) The issue previously decided is identical to the one presented in the action in question; (2) there is a final adjudication on the merits of the prior action; (3) the party against whom the doctrine is invoked was a party or in privity with a party to a prior action; and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

Arnold Agency v. West Virginia Lottery Comm'n, 206 W. Va. 583, 596, 526 S.E.2d 814, 827 (1999) (quoting Syl. Pt. 1, State v. Miller, 194 W. Va. 3, 459 S.E.2d 114 (1995)). The determination of the issue in the prior proceeding must have been "essential to the judgment" for issue preclusion to apply. Rowe v. Grapevine Corp., 206 W. Va. 703, 710, 527 S.E.2d 814, 821 (1999).

In Meadows v. Wal-Mart Stores, 207 W. Va. 203, 221, 530 S.E.2d 676, 694 (1999), the Court held that issue preclusion does not apply to consent judgments. The Court found a consent judgment "simply does not constitute a final adjudication of the merits which is demanded by our collateral estoppel rule." Id. Issue preclusion only applies where the parties' agreement makes an express statement regarding a matter or states issue preclusion should apply. Id. at 222.

Based on this law, it is clear collateral estoppel does not bar Defendant from seeking to

8

obtain Plaintiffs' medical records. The parties settled the underlying case before trial. It was agreed the total payment for all plaintiffs would not exceed the designated amount. Under the agreement, Defendant's insured made settlement offers to each of the individual plaintiffs. The ones who accepted received their settlement money. The plaintiffs who did not accept the offers received a trial on damages. However, the trial was not a true trial since it was only to determine the percentages of the remaining settlement money the non-settling plaintiffs would receive. Defendant's insured did not participate since it had no interest in the outcome. The parties' settlement agreement and settlement trial pose no collateral estoppel issues to this case under West Virginia law.

The Court also finds no merit in Plaintiffs' argument that they have somehow been prejudiced by Defendant's failure to seek the medical records until this time. Plaintiffs cite the famous legal premise that a person who prevents a something from occurring may not complain of its non-occurrence. Plaintiffs argue the medical records should have been obtained in the state action so this discovery would not be necessary. Yet as mentioned above, the state court proceedings were divided between issues concerning whether Defendant's insured sold defective products and liability to persons affected by any defective products. It was understandable that Defendant's insured did not conduct extensive discovery regarding medical liability until after the Phase I trial. The case settled before the Phase I trial could occur. The Court sees no reason to bar discovery on this ground. Having dealt with Plaintiffs' preliminary objections, the Court turns to the merits of the issue about whether Plaintiffs should be compelled to provide releases for their chest x-rays that were originally submitted in the state litigation.

There exists a division among courts about whether a court may order a party to provide

a medical records release. The first view mainly looks to the plain language of Rule 34 to conclude records not in the possession of the served party are not available. There have also been findings that Rule 34 does not permit a court to order a signature on a release form. The second view generally permits an order compelling a signature on a release form when a party has placed their medical records at issue in the case.

In <u>Clark v. Vega Wholesale, Inc.</u>, 181 F.R.D. 470, 472 (D. Nev. 1998), the court denied a request to compel a medical release because the relevant documents were not in the served party's possession. The court noted Rule 34 "requires that the party upon whom the request is served must be in possession, custody, or control of the requested item." <u>Id.</u>; <u>see also</u> Fed. R. Civ. P. 34(a). In that case, it was undisputed the served party did not have actual possession of the materials. <u>Clark</u>, 181 F.R.D. at 472. Yet the court noted that as long as a person has a legal right of control over something, he possesses it for purposes of Rule 34. <u>Id.</u> The court concluded the relationship between a patient and a physician is insufficient to establish legal control. <u>Id.</u> The <u>Clark</u> court bolstered this finding by citation to <u>Neal v. Boulder</u>, 142 F.R.D. 325, 327 (D. Colo. 1992) and <u>Greene v. Sears, Roebuck & Co.</u>, 40 F.R.D. 14, 16 (N.D. Ohio 1966). <u>Clark</u>, 181 F.R.D. at 472. In both of those cases, the court determined that records in the care of a physician were not in the control of the patient for Rule 34 purposes. <u>Neal</u>, 142 F.R.D. at 327; <u>Greene</u>, 40 F.R.D. at 16.

The District of Kansas evaluated the proper way to obtain records held by another person in <u>Johnson v. Kraft Foods North America, Inc.</u>, 236 F.R.D. 535, 540 (D. Kan. 2006). In that case, a party sought to compel a release form to obtain tax records from a third party. <u>Id.</u> The court held it found no language in Rule 34 to permit it to compel a signature on a release form.

Id. It stated that the proper way to obtain documents from a party outside the litigation was to serve a subpoena under Rule 45. Id. Only after production in response to the subpoena was denied would the court consider ordering a signature on a release form. Id.

On the other hand, a number of courts have held Rule 34 permits a court to compel a party to sign a release form where the party has placed the topic of documents of the release at issue. In Adams v. Ardcor, 196 F.R.D. 339, 344 (E.D. Wis. 2000), the plaintiff intended to call an expert witness regarding his alleged emotional distress. The court determined that this waived any privilege regarding psychological records and so ordered the plaintiff to sign a medical release. Id. Similarly, in Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 131 (E.D. Pa. 1997), the court held that since the plaintiff made specific allegations regarding her medical condition, she could not claim a privilege for the records dealing with that condition. The court ordered the plaintiff to sign a release. Id. Several other courts have employed similar reasoning to order parties to sign release forms. Williams v. NPC Int'l, Inc., 224 F.R.D. 612, 613 (N.D. Miss. 2004); Smith v. Logansport Community Sch. Corp., 139 F.R.D. 637, 649 (N.D. Ind. 1991); Brown v. Eli Lilly & Co., 131 F.R.D. 176, 178 (D. Neb. 1988).

This Court agrees with those courts finding that Rule 34 requires an item in a request for production be in the possession, custody, or control of the served party and that medical records held by a physician do not meet this description. The plain language of the Rule provides that a request for production must involve items "which are in the possession, custody or control of the party upon whom the request is served." Fed. R. Civ. P. 34(a). There is no provision in Rule 34 for requesting documents from a party that are possessed by another person. While a patient may be able to request medical records from a physician, the records are not sufficiently within the

patient's control to qualify under Rule 34. Clark, 181 F.R.D. at 472; Neal, 142 F.R.D. at 327; Greene, 40 F.R.D. at 16.

If Defendant wished to obtain the x-rays at issue, it should have served a subpoena under Rule 45. Rule 34 indicates this when it states that "A person not a party to the action may be compelled to produce documents and things or to submit to an inspection as provided in Rule 45." Fed. R. Civ. P. 34(c). Although it is unclear who currently holds the x-rays, it appears certain they are not in the possession of Plaintiffs. If the production of the documents was refused, Defendant could have properly brought a motion before the Court. Johnson, 236 F.R.D. at 540. Accordingly, Defendant's motion to compel regarding chest x-rays is DENIED.

II.

Whether Defendant Should Be Permitted to Take Additional Depositions

The Court now turns to the issue of whether Defendant should be permitted to take depositions in excess of those permitted by the Rules and the Court's scheduling order. Defendant contends this is necessary to help it prove its defense of fraud. Defendant states that in the underlying state action, the plaintiffs submitted twenty seven affidavits stating that Valley Supply sold asbestos containing products. Yet three of those plaintiffs, who are also plaintiffs in this action, later denied the substance of the affidavits during depositions. Defendant contends this shows evidence of fraud and asks the Court to permit additional depositions to depose the remaining twenty four affiants who are not parties to this action. Plaintiffs ask the Court to deny Defendant's request for additional depositions. They argue Defendant has been slothful in seeking the additional depositions and this means Court should not permit them. Plaintiffs also contends the Local Rules only permit additional depositions after a party exhausts its allotted

number of depositions. Plaintiffs point out Defendant has taken only one non-party deposition when it is entitled to ten and therefore this motion is not ripe.

The most recent scheduling order entered in this case came after the hearing on this motion, on June 22, 2007. The order provides that "The preemptive limitations on discovery under Fed. R. Civ. P. 26(a)(5) (i.e., numbers of interrogatories, requests for admission, and depositions) set out in LR Civ P 26.01(c) apply to this action unless stipulated to by the parties and agreed to by the Court or otherwise ordered." Federal Rule 26(a)(5) simply provides in relevant part that depositions are an appropriate tool for discovery. Local Rule 26.01(c) states that all plaintiffs and defendants are limited to ten depositions. These limitations were also provided in the Court's previous scheduling order of February 2007. Discovery under the current scheduling order is set to close on July 23, 2007. Although the current scheduling order limits discovery to experts, the Undersigned does not construe this limitation to apply to the instant motion since it was filed in April. The previous scheduling order does not contain this limitation.

Federal Rule 30 also speaks of limitations on the number of depositions parties may take. The Rule provides that where a deposition would result in a party taking more than ten depositions, the deposing party "must obtain leave of court, which shall be granted to the extent consistent with the principles stated in Rule 26(b)(2)." Fed. R. Civ. P. 30(a)(2). Rule 26(b)(2)(C) states that when considering whether to allow extra depositions, courts should consider whether:

> (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or

13

expense of the proposed discovery outweighs its likely benefit, taking into
account the needs of the case, the amount in controversy, the parties' resources,
the importance of the issues at stake in the litigation, and the importance of the
proposed discovery in resolving the issues.

Local Rule 26.01(d) further supplements the Court's consideration. It provides that a party seeking discovery in addition to the default amount provided under the Rules should make a motion after other opportunities "have been exhausted." L.R. Civ. P. 26.01(d).

The law is clear that a party's lack of diligence in pursuing discovery represents a ground for refusing to deviate from the default of the Rules. In Walls v. General Motors Corp., 906 F.2d 143, 147 (5th Cir. 1990), the court stated that since a party "had ample time and sufficient opportunities to conduct the discovery procedures which he complains were denied him," he could not complain about the district court's failure to prolong discovery. Other courts have also held the diligence of the moving party key in the context of modifying scheduling orders.[2] Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000); Johnson v. Mammoth Recreations, 975 F.2d 604, 610 (9th Cir. 1992).

In this case, the record demonstrates Defendant has failed to exhibit the necessary diligence to warrant a grant of additional depositions at this late stage of the litigation. Defendant has known about the affidavits of the people it seeks to depose since February 2004, when the underlying state litigation was still ongoing. The present case was removed to this Court in July 2005. On September 1, 2005, the district court entered a scheduling order providing that discovery should be finished by July 2006. In June 2006, a new scheduling order was entered providing for discovery to end in March 2007. Defendant took depositions from the

---

[2] Granting additional depositions in this case would not technically involve a modification to the scheduling order since the scheduling order allows for a party to seek a deviation from the default of the Rules.

three persons it claims disclaimed their affidavits from the underlying action between December 11-12, 2006.  At this point Defendant knew the deponents disclaimed their affidavits.  In spite of this, it appears the first time Defendant raised the issue of deposing all the plaintiffs who provided affidavits in the underlying action to Plaintiffs' counsel was on March 13, 2007 – three months after the depositions.  Plaintiff stated it would agree to only a limited number of depositions in two letters on March 15 and 16.  This appears to be the final communication counsel had about the depositions.  Yet Defendant then waited nearly another month until April 13 to file a motion to compel.  The Court believes Defendant could have filed a motion to compel extra depositions significantly earlier than it did.  If Defendant had acted promptly on the information obtained from the December depositions, it could have conferred with Plaintiffs in December and maybe even filed a motion to compel before 2007.  Defendant could have at least filed such a motion by January 2007.  Instead, Defendant waited three more months until April 2007.  The Court holds Defendant had ample opportunity to seek these depositions prior to the time it did.  Defendant's motion to compel additional depositions is therefore DENIED.

## IV.  Decision

Defendant's motion to compel production of documents and to enlarge the number of allowable depositions is hereby DENIED.

Any party may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is  made, and the basis for such objection.  A copy of such objections should also be submitted to the District Court Judge of Record.  Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon

such Order. Filing of objections does not stay this order. Filing a motion to stay this order does not stay this order. In the absence of an order from the district court staying this order, all parties must comply with this order in a timely fashion as set forth herein.

DATED: July 2, 2007

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE